FILED

2012 Mar-01  PM 05:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **JESSICA LEE WALLACE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 2:11-CV-2723-VEH** |
| | ) |
| **ERIC H. HOLDER, JR., in his** | ) |
| **Official Capacity as Attorney** | ) |
| **General of the United States** | ) |
| **Department of Justice, (Federal** | ) |
| **Bureau of Investigation), Agency,** | ) |
| | ) |
| **Defendant.** | ) |

---

## MEMORANDUM OPINION AND ORDER

### I.      Introduction

Plaintiff Jessica Lee Wallace ("Ms. Wallace") initiated this job discrimination

case arising under Title VII of the Civil Rights Act of 1964 against Defendant Eric

H. Holder, Jr., in his official capacity as the Attorney General of the United States

Department of Justice, (the "Attorney General") on July 29, 2011. (Doc. 1). Pending

before the court are the Attorney General's Rule 12(b)(1) and Rule 56 Motion To

Dismiss Counts Two and Three of Plaintiff's Complaint Based on Lack of

Jurisdiction (Doc. 15) (the "Jurisdictional Motion") filed on January 26, 2012, and

his related Second Motion for Reconsideration (Doc. 18) (the "Reconsideration

Motion") filed on January 27, 2012.  These motions stem from the court's prior rulings in favor of Ms. Wallace regarding the preservation of certain evidence relating to a non-party witness named Lorenza A. Moore ("Mr. Moore").  (Docs. 12, 17).

On January 27, 2012, the court entered a scheduling order on the Jurisdictional Motion and the Reconsideration Motion.  (Doc. 19).  The Attorney General already had filed his brief in support of the Jurisdictional Motion on January 26, 2012.  (Doc. 16).  Ms. Wallace filed her opposition (Doc. 21) on February 3, 2012, and the Attorney General followed with his reply (Doc. 22) on February 10, 2012.  On February 21, 2012, the Attorney General filed a supplement (Doc. 23) to his reply. Accordingly, both motions are now under submission, and, for the reasons explained below, the Jurisdictional Motion is **GRANTED IN PART** on sovereign immunity grounds and is otherwise **DENIED**.  The Reconsideration Motion is **DENIED**.

## II.    Standards

### A.    Rule 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a party to assert the defense of lack of subject matter jurisdiction.  A motion to dismiss based on lack of subject matter jurisdiction should be granted "only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief."  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

Lack of subject matter jurisdiction may be found through an examination of: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts and the court's resolution of disputed facts. *Id.* Because the burden of proof on a motion to dismiss for lack of subject matter jurisdiction is on the party asserting jurisdiction, the plaintiff "constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming*, 281 F.3d at 161 (citing *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)).[1]

Attacks on subject matter jurisdiction take two forms: (1) facial attacks, and (2) factual attacks. *Scarfo v. Ginsberg*, 175 F.3d 957, 960 (11th Cir. 1999) (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). Facial attacks on a complaint "require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [plaintiff's] complaint are taken as true for the purposes of the motion." *Lawrence*, 919 F.2d at 1529 (quoting *Menchaca*, 613 F.2d at 511). Factual attacks challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.* (same).

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

### B.   Rule 56

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R . Civ. P. 56(c).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant.  *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.* , 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).  "Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to 'come forward with specific facts showing that there is a genuine issue for trial.'" *Int'l Stamp Art, Inc. v. U.S. Postal Serv.*, 456 F.3d 1270, 1274 (11th Cir. 2006) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1355-56, 89 L. Ed. 2d 538 (1986)).

### C.   Reconsideration

In the interests of finality and conservation of scarce judicial resources, reconsideration of an order is an extraordinary remedy and is employed sparingly. *See United States v. Bailey*, 288 F. Supp. 2d 1261, 1267 (M.D. Fla. 2003); *Pennsylvania Ins. Guar. Ass'n v. Trabosh*, 812 F. Supp. 522, 524 (E.D. Pa. 1992); *Spellman v. Haley*, No. 97-T-640-N, 2004 WL 866837, at *2 (M.D. Ala. Feb. 22,

4

2002) ("[L]itigants should not use motions to reconsider as a knee-jerk reaction to an adverse ruling.") (citation omitted).   Indeed,   as a general rule, "[a] motion to reconsider is only available when a party presents the court with evidence of an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice." *Summit Med. Ctr. of Ala., Inc. v. Riley*, 284 F. Supp. 2d 1350, 1355 (M.D. Ala. 2003).

It is well established in this circuit that "[a]dditional facts and arguments that should have been raised in the first instance are not appropriate grounds for a motion for reconsideration." *Rossi v. Troy State Univ.*, 330 F. Supp. 2d 1240, 1249 (M.D. Ala. 2002) (denying motion to reconsider when plaintiff failed to submit evidence in question prior to entry of order and failed to show good cause why he could not have done so).[2]   Furthermore, the Eleventh Circuit has declared that "a motion to reconsider should not be used by the parties to set forth new theories of law." *Mays v. U.S. Postal Serv.*, 122 F.3d 43, 46 (11th Cir. 1997); *see also Russell Petroleum Corp. v. Environ Prods., Inc.*, 333 F. Supp. 2d 1228, 1234 (M.D. Ala. 2004) (relying on *Mays* to deny motion to reconsider when movant advanced several new

---

[2]   Likewise, motions to reconsider are not a platform to relitigate arguments previously considered and rejected.   *See Lazo v. Wash. Mut. Bank*, 10 Fed. App'x 553, 553 (9th Cir. 2001) (motion to reconsider is properly denied where movant merely reiterates meritless arguments); *Am. Marietta Corp. v. Essroc Cement Corp.*, 59 Fed. App'x 668 (6th Cir. 2003) (similar).

arguments); *Coppage v. U.S. Postal Serv.*, 129 F. Supp. 2d 1378, 1379-81 (M.D. Ga. 2001) (similar);[3] *Richards v. United States*, 67 F. Supp. 2d 1321,1322 (M.D. Ala. 1999) (same).

Notwithstanding these limitations, reconsideration is appropriate to correct manifest errors of law or fact. *See* Fed. R. Civ. P. 60(b); *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996) ("Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence."); *Summit*, 284 F. Supp. 2d at 1355 ("A motion to reconsider is only available when a party presents the court with evidence of an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice.").  The grant or denial of a motion to reconsider is left to the discretion of the district court. *See Chapman v. AI Transport*, 229 F.3d 1012, 1023-24 (11th Cir. 2000).

## III.   Analysis

### A.   Jurisdictional Motion

Ms. Wallace's complaint contains three counts:  count one is entitled "Sex Discrimination Violation of Title VII" and alleges that the Attorney General violated

---

[3]  This discussion is lifted almost verbatim from Judge Steele's opinion in *Gougler v. Sirius Products, Inc*., 370 F. Supp. 2d 1185, 1189 (S.D. Ala. 2005).

Title VII by "allowing an unqualified male Special Agent to administer the Physical Fitness Test to the Plaintiff, who had a track record of not passing female applicants" (Doc. 1 ¶ 47); count two is entitled "Civil Conspiracy" and asserts that the Attorney General "participated in an ongoing civil conspiracy . . . through FBI Birmingham EEO Coordinator Lorenza A. Moore and the then FBI Birmingham SAC Carmen S. Adams to deprive the Plaintiff, and others . . . of their Title VII rights[;]" (Doc. 1 ¶ 50); and count three is entitled "Ongoing Improper Practice" and maintains that the Attorney General "engaged in an ongoing improper practice in the Birmingham Division of the FBI by threatening employees and retaliating against employees, including the Plaintiff, who would raise concerns about the EEO program or who would consider filing an EEO complaint, thus casting a chilling effect on the entire program." (Doc. 1 ¶ 56).

As the Attorney General summarizes the grounds in support of his Jurisdictional Motion:

> [T]he Court should dismiss these claims because (1) the United States has not waived sovereign immunity for claims under the two statutes (other than Title VII) that Plaintiff relies on, (2) Plaintiff failed to administratively exhaust the Title VII retaliation claims she now asserts, and (3) the United States has not waived sovereign immunity for claims asserting alleged improprieties in the EEO process.

(Doc. 16 at 1-2).  The court addresses each argument below.

7

### 1.    The waiver of sovereign immunity is limited.

The Attorney General has raised sovereign immunity as a basis for dismissing at least part of Ms. Wallace's complaint.  (Doc. 16 at 7 ("Thus, given no waiver of sovereign immunity, the Court must dismiss Counts Two and Three of Plaintiff's complaint except to the extent that they allege a claim of retaliation for prior protected EEO activity.")).  The United States of America, as a sovereign, is immune from suit unless it has consented to be sued.  *United States v. Sherwood*, 312 U.S. 584, 586, 61 S. Ct. 767, 769, 85 L. Ed. 1058 (1941).  "Sovereign immunity is jurisdictional in nature.  Indeed, the terms of the United States' consent to be sued in any court define that court's jurisdiction to entertain the suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475, 114 S. Ct. 996, 1000, 127 L. Ed. 2d 308 (1994).

Waivers of sovereign immunity are to be strictly construed and no exceptions implied.  *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 34, 112 S. Ct. 1011, 1014, 117 L. Ed. 2d 181 (1992); *see also United States v. Testan*, 424 U.S. 392, 399, 96 S. Ct. 948, 953-54,  47 L. Ed. 2d 114 (1976) ("[A] waiver of the traditional sovereign immunity 'cannot be implied but must be unequivocally expressed.'"); *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95, 111 S. Ct. 453, 457, 112 L. Ed. 2d 435 (1990) (same).  Therefore, in the absence of clear congressional intent, the courts routinely find no jurisdiction to entertain suits against the United States and dismiss any such

actions. *United States v. Mitchell*, 445 U.S. 535, 538, 100 S. Ct. 1349, 1351, 63 L. Ed. 2d 607 (1980).

As a basis for conferring jurisdiction, Ms. Wallace relies upon 42 U.S.C. § 2000e, *et seq.*, 28 U.S.C. § 1331, and 28 U.S.C. § 1343(a). (Doc. 1 ¶¶ 1-2). In *Beale v. Blount*, 461 F.2d 1133 (5th Cir. 1972), the former Fifth Circuit held:

> Sections 1331 and 1343, Title 28, United States Code, may not be construed to constitute waivers of the federal government's defense of sovereign immunity. *Cotter Corporation v. Seaborg*, 10 Cir. 1966, 370 F.2d 686, 692. Beale's complaint thus alleges no proper jurisdictional basis for seeking reinstatement.

461 F.2d at 1138 (emphasis added). Thus, Ms. Wallace's reliance on §§ 1331 and 1343 to establish sovereign immunity waiver is foreclosed. The court therefore turns to Ms. Wallace's Title-based waiver argument.

42 U.S.C. § 2000e-16 addresses employment by the federal government and provides for a waiver of sovereign immunity under Title VII:

> (c) Civil action by employee or applicant for employment for redress of grievances; time for bringing of action; head of department, agency, or unit as defendant

> Within 90 days of receipt of notice of final action taken by a department, agency, or unit referred to in subsection (a) of this section, or by the Equal Employment Opportunity Commission upon an appeal from a decision or order of such department, agency, or unit on a complaint of discrimination based on race, color, religion, sex or national origin, brought pursuant to subsection (a) of this section, Executive Order 11478 or any succeeding Executive orders, or after one hundred and

eighty days from the filing of the initial charge with the department, agency, or unit or with the Equal Employment Opportunity Commission on appeal from a decision or order of such department, agency, or unit until such time as final action may be taken by a department, agency, or unit, an employee or applicant for employment, if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, <u>may file a civil action as provided in section 2000e-5 of this title, in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant</u>.

42 U.S.C. § 2000e-16(c) (emphasis added).[4]

---

[4] "A separate section of the Act—its antiretaliation provision—prohibits an employer from 'discriminat[ing] against' an employee or job applicant because that individual 'opposed any practice' made unlawful by Title VII or 'made a charge, testified, assisted, or participated in' a Title VII proceeding or investigation. § 2000e–3(a)." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 56, 126 S. Ct. 2405, 2408, 165 L. Ed. 2d 345 (2006). The court notes that an action for retaliation is not expressly mentioned in Title VII's waiver of sovereign immunity section. However, the United States Supreme Court has stated that "[i]n 1972 Congress extended Title VII so that it applies not only to employment in the private sector, but to employment in the Federal Government as well." *West v. Gibson*, 527 U.S. 212, 214, 119 S. Ct. 1906, 1908, 144 L. Ed. 2d 196 (1999).

More recently, the Supreme Court concluded that sovereign immunity does not bar a federal worker from pursuing a retaliation claim against the United States Postal Service under the Age Discrimination in Employment Act ("ADEA"). *See Gomez-Perez v. Potter*, 553 U.S. 474, 491, 128 S. Ct. 1931, 1943, 170 L. Ed. 2d 887 (2008) ("For these reasons, we hold that § 633a(a) prohibits retaliation against a federal employee who complains of age discrimination."). In *Gomez*, the Court noted regarding Title VII:

<u>While the federal-sector provision of Title VII does not incorporate § 2000e-3(a), the federal-sector provision of Title VII does incorporate a remedial provision, § 2000e-5(g)(2)(A), that authorizes relief for a violation of § 2000e-3(a)</u>. Petitioner argues that <u>this remedial provision shows that Congress meant for the Title VII</u>

Therefore, the scope of the Title VII sovereign immunity waiver provision applicable to suits filed by federal employees against the federal government limits the United States' exposure to those actions challenging discriminatory and/or retaliatory conduct[5] on the part of a federal agency.   Further, claims of civil conspiracy and ongoing improper practice are not explicitly mentioned in the waiver provision or incorporated elsewhere into the statute.

Citing *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396

---

federal-sector provision's broad prohibition of "discrimination based on race, color, religion, sex, or national origin" to reach retaliation because otherwise there would be no provision banning retaliation in the federal sector and thus no way in which relief for retaliation could be awarded. Brief for Petitioner 20.  The Federal Government, however, has declined to take a position on the question whether Title VII bans retaliation in federal employment, *see* Tr. of Oral Arg. 31, and that issue is not before us in this case.

*Gomez*, 533 U.S. at 488 n.4, 128 S. Ct. at 1941 n.4.  The *Gomez* Court also observed that "[t]he ADEA federal-sector provision was patterned 'directly after' Title VII's federal-sector discrimination ban." *Id.* at 487, 128 S. Ct. at 1940.

Based upon this court's research, the Title VII sovereign immunity open question identified in *Gomez* still remains unanswered with respect to any Supreme Court authority.  The court also has not been able to locate an Eleventh Circuit published opinion which directly analyzes this issue.  Against the *Gomez* backdrop, and because the Attorney General has not advanced the theory that sovereign immunity bars Ms. Wallace from pursuing relief for retaliation under Title VII for conduct allegedly engaged in by the FBI, the court finds, in the context of this order, that actions for Title VII retaliation are maintainable against the United States.

[5] *See supra* n.4.

(1982), Ms. Wallace confusingly interjects the issue of qualified immunity in opposing the Jurisdictional Motion. (*See, e.g.*, Doc. 21 at 3-4 ("[Q]ualified immunity is designed to shield government officials from actions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.") (emphasis omitted)); *id.* at 5 ("The actions taken by those involved, including former EEO Counselor/Coordinator Lorenza Moore and former Special Agent in Charge Carmen Adams as described in the Complaint, were not discretionary and clearly the Defendant was aware of the rights established under Title VII, 42 U.S.C. § 2000e-16, Employment by Federal Government, and further prescribed by Equal Employment Opportunity Commission (EEOC) Management Directive 110.")).  However, the qualified immunity doctrine pertains to public employees that have been sued in their <u>individual</u> capacities and are inapplicable to a public employee, such as the Attorney General, sued in his <u>official</u> capacity.

Against this backdrop, Ms. Wallace has not come close to meeting her jurisdictional burden, which, as pointed out above in section II.A, is exclusively hers to bear.  Instead, she incorrectly contends that the individually-related defense of qualified immunity somehow creates an implicit waiver of the United States' sovereign immunity.  Accordingly, the court agrees with the Attorney General that counts two and three of Ms. Wallace's complaint are due to be dismissed on

sovereign immunity grounds "except to the extent that they allege a claim of retaliation for prior protected EEO activity."[6]  (Doc. 16 at 7).  Thus, that portion of the Jurisdictional Motion is **GRANTED**.

> **2.     The requirement of administrative exhaustion is not jurisdictional, but regardless of whether the defense is analyzed under Rule 12(b)(1), Rule 12(b)(6), or Rule 56, the doctrine does not bar Ms. Wallace from pursuing the type of retaliation claim asserted in her complaint.**

In the second part of his Jurisdictional Motion, the Attorney General continues to insist that the holding in *Jackson v. Seaboard Coast Line R. Co.*, 678 F.2d 992, 1003 (11th Cir. 1982) (citing *Zipes  v. Trans World Airlines, Inc.*, 455 U.S. 385, 102 S. Ct. 1127, 71 L. Ed. 2d 234 (1982), and concluding "that the conditions precedent to filing a Title VII suit are not jurisdictional prerequisites"), does not apply to federal sector employees.   The court finds the Attorney General's position to be unpersuasive, especially as it is primarily premised upon unhelpful and non-binding dicta or off-point authority from the Eleventh Circuit.[7]  Because the court has already

---

[6] Count one is also unaffected by the sovereign immunity defense as it asserts a claim for sex discrimination under Title VII.

[7] None of the published decisions cited by the Attorney General <u>analyzes</u> the issue of whether the *Jackson* rule should apply to federal employees, much less <u>holds in a reasoned decision</u> that *Jackson* is inapplicable to litigants employed outside of the private sector.  For example, the Attorney General relies upon *Grier v. Sec'y of Army*, 799 F.2d 721 (11th Cir. 1986), and indicates that the decision supports the

articulated its rationale for rejecting the Attorney General's stance that administrative

---

following proposition: "While questions of timeliness in the exhaustion process may be subject to equitable tolling and thus fall within the purview of a Rule 12(b)(6) analysis, the total failure to raise a claim in the administrative process is jurisdictional." (Doc. 16 at 8 (emphasis added)).  Although *Grier* acknowledges the *Zipes* holding as applicable to federal employees, the opinion does not address the *Jackson* rule and it does not hold (or even suggest) that all other condition precedents to bringing a Title VII suit are jurisdictional requirements for federal employees:

> Plaintiff argues that she should be excused from the requirement that any charge of racial discrimination be filed with the agency because she was counseled not to file such a charge by an Army personnel officer and the Atlanta Office of the EEOC.  However, even if her version of events is assumed to be true, such equitable considerations are relevant to whether the timeliness requirement for filing a charge should be subject to equitable tolling, not whether a charge must ever be filed at all; it is her failure to exhaust or even begin her administrative remedies that bars her suit.  *Siegel v. Kreps*, 654 F.2d 773, 777 (D.C. Cir. 1981).  While the timeliness requirement does not erect a jurisdictional prerequisite to suit, *Zipes v. Trans World Airlines*, 455 U.S. 385, 397, 102 S. Ct. 1127, 1134, 71 L. Ed. 2d 234 (1982), this does not "suggest [ ] that parties complaining of federal employment discrimination in violation of Title VII should ever be waived into court without filing any initial charge with the agency whose practice is challenged."  *Kizas v. Webster*, 707 F.2d at 545-46 (emphasis in the original).

799 F.2d at 724.  Additionally, *Grier* is inapposite because Ms. Wallace has filed a charge of discrimination against the FBI and the  disputed issue between the parties is what claims are maintainable in light of that charge, not whether Ms. Wallace "should . . . be waived into [federal] court without filing any initial charge with the agency whose practice is challenged." *Crawford v. Babbit*, 186 F.3d 1322 (11th Cir. 1999), is similarly devoid of any on-point analysis of the differences between private and federal sector employment in the context of applying Title VII's administrative exhaustion requirements.

exhaustion is a subject matter jurisdictional prerequisite for federal employees, despite unequivocal binding authority from the Eleventh Circuit indicating a contrary rule for private litigants (*see* Doc. 17), in the interest of judicial economy, it will not restate such reasoning again here. *Cf. Irwin*, 498 U.S. at 95, 111 S. Ct. at 457 ("Once Congress has made such a [sovereign immunity] waiver, we think that making the rule of equitable tolling applicable to suits against the Government, in the same way that it is applicable to private suits, amounts to little, if any, broadening of the congressional waiver.") (emphasis added); *id.* at 95-96, 111 S. Ct. at 457 ("We therefore hold that the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States.")

Moreover, from a merits standpoint, the court concludes that the Attorney General is incorrect–the requirement of administrative exhaustion in this instance (and regardless of what procedural rule applies to it) does not bar Ms. Wallace from pursuing the type of retaliation claim that she has asserted in her complaint based upon the application of the so-called *Gupta* rule. *See Hargett v. Valley Fed. Sav. Bank*, 60 F.3d 754, 762 (11th Cir. 1995) ("In *Gupta*, the court held that there is no need to file a subsequent EEOC charge involving a retaliation claim where the claim 'grows out of an administrative charge that is properly before the court,' because the court has ancillary jurisdiction over the claims."). Stated differently, under *Gupta*,

15

a litigant is simply not required to administratively exhaust a retaliation claim that arises out of a previously and properly filed administrative charge of discrimination.[8] *Cf. Houston v. Army Fleet Servs., L.L.C.*, 509 F. Supp. 2d 1033, 1043 (M.D. Ala. 2007) ("If, however, the alleged retaliatory action occurs *before* the initial EEOC charge is filed, a plaintiff must exhaust his administrative remedies as to that claim by including factual information in the charge that discloses the factual basis for the retaliation claim.").

As the Eleventh Circuit has clarified the contours of the *Gupta* rule:

> In *Gupta*, the district court had allowed the plaintiff to amend his complaint to add allegations of retaliatory discharge, even though he had not filed charges with the EEOC. Although Baker did not seek leave to amend the complaint in this case before she filed the motion for injunctive relief, the court's reasoning in *Gupta* still applies. <u>It has long been established in this circuit that the scope of a judicial complaint is defined by the scope of the EEOC investigation that "can reasonably be expected to grow out of the charge of discrimination."</u> *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970); *see also Turner v. Orr*, 804 F.2d 1223, 1226-27 (11th Cir. 1986). <u>Because a claim of retaliation could reasonably be expected to grow out of the</u>

---

[8] Ms. Wallace has alleged in her complaint that she "has fulfilled all conditions precedent to the institution of this action, as required under Title VII." (Doc. 1 ¶ 4). Ms. Wallace's charge of sex discrimination against the FBI (Complaint No. FBI-2009-00150) is referenced in her federal lawsuit and has been made part of the record by the Attorney General. (Doc. 10-3 at 18-27). Finally, the Attorney General has acknowledged that Ms. Wallace's Title VII gender discrimination claim is properly before this court. (Doc. 13 at 16 "[T]he EEO process she complains of functioned to the extent that it provided her with the means to bring her properly exhausted Title VII gender discrimination claim for *de novo* review before this Court.")).

> original charge of discrimination, the district court had jurisdiction over
> the motion for injunctive relief.

*Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 169 (11th Cir. 1988) (emphasis

added).   Thus, controlling precedent from the Eleventh Circuit unambiguously

establishes that "a claim of [Title VII] retaliation could reasonably be expected to

grow out of the original charge of [Title VII gender] discrimination."   There simply

is no authority for the Attorney General's contention that Ms. Wallace had to file a

new charge because her new claim of retaliation involves different and/or additional

personnel than the originally identified decisionmaker, who was administratively

accused of engaging in the underlying discriminatory conduct, even though her new

retaliation claim grew out her previously filed discrimination charge.[9]   (Doc. 16 at

9).

In contesting the application of the *Gupta* rule, the Attorney General also

argues that Ms. Wallace has failed to "assert a subsequent retaliatory act that was

committed against her following the filing of her administrative EEO complaint."

(Doc. 16 at 9).   The Attorney General further opines, without citation to any authority,

_____

[9]   The court acknowledges that Ms. Wallace's letter attached to her charge of
discrimination against the FBI references retaliation on the part of Agent Snider in
his administering the physical fitness test.   (Doc. 10-3 at 23).   However, this pre-
charge allegation does not preclude Ms. Wallace from asserting a subsequent act of
retaliation stemming from her filing of the charge against the FBI.

that merely alleging her belief "that making contact with and sharing her EEO concerns with Moore was the reason for her demise in seeking FBI employment" is not enough.  (Doc. 16 at 9).

Assuming without deciding that the Attorney General is correct about the sufficiency of the seeking FBI employment allegation, he ignores Ms. Wallace's other assertions set forth in her federal court complaint that occurred <u>after</u> she filed her EEO charge.  More specifically, Ms. Wallace contends, *inter alia*, that "[o]n several occasions, FBI EEO Investigator Supervisory Special Agent (hereinafter "SSA") Gary Ludwick (hereinafter "Ludwick") attempted to persuade the Plaintiff <u>to drop her EEO complaint</u>" and further that "[o]n several occasions, SA Ellingwood attempted to persuade the Plaintiff <u>to drop her EEO complaint</u>."  (Doc. 1 ¶¶ 22, 23 (emphasis added)).

The court finds that the pressuring and repeated nature of these alleged acts, which all arose <u>subsequent to and directly out of</u> Ms. Wallace's filing of her EEO Title VII complaint at the administrative level and which were made by FBI personnel, falls squarely within the material adversity standard of retaliatory actions that are "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 548 U.S. at 57, 126 S. Ct. at 2409.  Under *Burlington*'s enlarged definition of Title VII retaliation, Ms.

Wallace no longer must identify an adverse employment-related action taken by the FBI to support her claim as Title VII's "antiretaliation provision does not confine the actions and harms it forbids to those that are related to employment or occur at the workplace." 548 U.S. at 57, 126 S. Ct. at 2409.

The Attorney General also maintains that this court should not follow *Gupta* and *Hargett* because they "are factually distinguishable from this case." (Doc. 16 at 10). Specifically, the Attorney General seems to suggest that the court should find in his favor because, in those opinions, "the alleged retaliatory event which had not been exhausted occurred after the filing of a lawsuit and could reasonably have been expected to grow out of the complainant's original charge of discrimination." (Doc. 16 at 10. The Attorney General cites to no case authority which confirms that this distinction between pre-lawsuit versus post-lawsuit retaliatory conduct is a determinative factor when deciding whether to invoke the *Gupta* rule. *Cf. Flanigan's Enters., Inc. v. Fulton Cnty., Ga.*, 242 F.3d 976, 987 n.16 (11th Cir. 2001) (holding that a party waives an argument at appellate level if the party "fail[s] to elaborate or provide any citation of authority in support" of the argument); *Ordower v. Feldman*, 826 F.2d 1569, 1576 (7th Cir. 1987) (stating that an argument made without citation to authority is insufficient to raise an issue before the court). Additionally, the court is not aware of any binding authority which embraces such a notion. Therefore, the

19

court finds that Ms. Wallace's retaliation claim that is included in her complaint is not barred due to the defense of administrative exhaustion, and that part of the Jurisdictional Motion is **DENIED**.

> ### 3. To the extent that count three of Ms. Wallace's complaint attacks the administrative processes generally as opposed to any retaliatory acts specifically, sovereign immunity bars such claims.

In the last section of the Jurisdictional Motion, the Attorney General raises the defense of sovereign immunity again and asks the court to dismiss count three of Ms. Wallace's complaint in its entirety. Consistent with the court's ruling in III.A.1 above, to the extent that count three of Ms. Wallace's complaint attacks the administrative processes generally as opposed to any retaliatory acts specifically, sovereign immunity bars such claims. Accordingly, the last part of the Jurisdictional Motion is **GRANTED**, but only in the limited manner stated herein.

### B.   Reconsideration Motion

The Attorney General's Reconsideration Motion contends that this court has made a "clear error of law" in holding that the "exhaustion of administrative remedies is not a jurisdictional prerequisite for a Title VII federal employment sector case." (Doc. 18 at 1-2 (emphasis omitted)). Nothing in the Attorney General's multiple filings on this issue establishes error on the part of the court, much less a clear one.

Accordingly, the Reconsideration Motion is **DENIED**.

### C.    Repleader Required

In light of the above rulings, which limit Ms. Wallace's claims, Ms. Wallace is **HEREBY ORDERED** to replead her complaint no later than March 12, 2012.  In repleading, Ms. Wallace should avoid lumpily pleading her claims and running afoul of the Eleventh Circuit's admonishment against shotgun pleading as explained in *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955 (11th Cir. 2008) and the related cases cited to therein.  *See Davis*, 516 F.3d at 979 ("The complaint is a model 'shotgun' pleading of the sort this court has been roundly, repeatedly, and consistently condemning for years, long before this lawsuit was filed.").  In other words, each claim of discrimination and retaliation should be separately pled in an independent count.

In filing her amended complaint, Ms. Wallace also should be cognizant of the pleading requirements of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563, 127 S. Ct. 1955, 1969, 167 L. Ed. 2d 929 (2007) ("[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint.") and *Ashcroft v. Iqbal*, 556 U.S. 662, ___, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009) ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they

plausibly give rise to an entitlement to relief."). Accordingly, Ms. Wallace should only assert those discrimination and retaliation claims which she can plausibly support under Title VII in light of her factual allegations.

## IV.   Conclusion

Accordingly, for all the reasons explained above, the Attorney General's Jurisdictional Motion is **GRANTED IN PART** on sovereign immunity grounds and otherwise is **DENIED**, and his related Reconsideration Motion is **DENIED**. Further, Ms. Wallace is **HEREBY ORDERED** to replead her complaint no later than March 12, 2012.

**DONE** and **ORDERED** this the 1st day of March, 2012.

**VIRGINIA EMERSON HOPKINS**
United States District Judge